United States Court of Appeals,

Fifth Circuit.

No. 91-6037.

Frances S. HODGES, Plaintiff-Appellant,

v.

DELTA AIRLINES, INC., Defendant-Appellee.

Oct. 14, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before DAVIS and JONES, Circuit Judges, and PARKER[*], District Judge.

EDITH H. JONES, Circuit Judge:

The question posed in this case is whether a tort claim for physical injury based on an unsafe condition in an airplane is preempted by § 1305 of the Airline Deregulation Act of 1978. Bound by a previous unpublished opinion of this court, we must hold that it is. *Baugh v. Trans World Airlines, Inc.,* 915 F.2d 693 (1990). The panel believes this is the wrong result and urges *en banc* review.

During a flight from the Caribbean to Miami, a fellow passenger opened the overhead compartment directly above Frances Hodges, dislodging and spilling a case containing several bottles of rum. The box fell on Hodges and lacerated her left arm and wrist. Before Hodges's profuse bleeding was brought under control, a significant amount of her blood mingled in the aisle with the puddle of rum and broken glass.

Hodges filed suit in federal court, complaining that Delta Airlines's negligence caused her injury and pain and high medical expenses. Delta argued successfully before the district court that Hodges's claims are preempted by section 1305 of the Airline Deregulation Act of 1978 (ADA), 49 U.S.C.App. §§ 1301 *et seq.,* and that the ADA contains no implied private right of action. We review the district court's consequent granting of a summary judgment *de novo.* If the panel were to decide the issue in the first instance, we would decide that there was no ADA preemption of this bodily injury tort case. As stated before, we may not do so.

---

[*]Chief District Judge of the Eastern District of Texas, sitting by designation.

DISCUSSION

The statute provides in pertinent part:

> [N]o State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes or services of any air carrier having authority under Title IV of this Act to provide air transportation.

49 U.S.C.App. § 1305(a)(1).

Although the ADA was passed in 1978, until recently no one even supposed that section 1305 preempts state tort claims.[1]  The Seventh Circuit noted that "[s]tate courts award damages every day in air crash cases, notwithstanding that federal law preempts the regulation of safety in air travel," confidently adding that "[t]he Federal Aviation Act does not expressly preempt state damages remedies." *Bieneman v. City of Chicago,* 864 F.2d 463, 471 (7th Cir.1988).  More recently, however, the airlines have begun to argue that various state-law tort claims are expressly preempted by section 1305, especially in the wake of *Morales v. Trans World Airlines, Inc.,* --- U.S. ----, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

State law is displaced by federal law under the supremacy clause where (1) Congress expressly preempts state law;[2]  (2) congressional intent to preempt is inferred from the existence of a pervasive federal regulatory scheme;[3]  or (3) state law conflicts with federal law or interferes with the achievement of congressional objectives.[4]  "[T]he question whether a certain state action is pre-empted by federal law is one of Congressional intent.  "The purpose of Congress is the ultimate

---

[1]In *Schwamb v. Delta Airlines, Inc.,* 516 So.2d 452 (La.Ct.App.1987), a case whose facts are generally indistinguishable from the present case, Delta never even suggested that the plaintiff's tort claims were preempted by section 1305.

[2]*Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d (1985); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983); *Jones v. Rath Packing Co.,* 430 U.S. 519, 535, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

[3]*Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375; *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

[4]*Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375; *Lawrence County v. Lead-Deadwood School Dist. No. 40-1,* 469 U.S. 256, 260, 105 S.Ct. 695, 698, 83 L.Ed.2d 635 (1985); *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Florida Lime & Avacado Growers, Inc. v. Paul,* 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963).

touchstone.' "[5] This case involves a claim of express preemption. We begin with the language of the statute.

In evaluating the scope of § 1305(a) preemption, one must bear in mind its origin in the ADA, an economic deregulation statute. The Federal Aviation Act of 1958 (FAA), 72 Stat. 731, 49 U.S.C.App. § 1301 *et seq.* (as amended), conferred on the Civil Aeronautics Board economic regulatory authority over interstate air transportation. The FAA did not expressly preempt state regulation of intrastate air transportation. In 1978, Congress amended the FAA after determining that efficiency, innovation, low prices, variety, and quality would be best furthered by reliance on competitive market forces in the airline industry. Congress enacted the ADA to dismantle the pervasive federal economic regulation of the interstate airline industry. To prevent the states from frustrating the goals of federal deregulation by establishing or maintaining economic regulations of their own, Congress included in the ADA section 1305, which preempts the states from enforcing any law "relating to rates, routes, or services" of any air carrier. *Morales,* --- U.S. at ----, 112 S.Ct. at 2034.

*Morales* informs but does not squarely resolve this case. In *Morales,* the Supreme Court held that the attempts of several state attorneys general to enforce state laws prohibiting deceptive advertising by the airlines were preempted by § 1305(a). *Morales* first drew upon the broad construction of the phrase "relating to" in the ERISA cases.[6] Thus, the phrase "relating to" means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales,* --- U.S. at ----, 112 S.Ct. at 2037 (quoting Black's Law Dictionary 1158 (5th ed. 1979)). Consequently, "state enforcement actions having a connection with

---

[5]*Pilot Life,* 481 U.S. at 45, 107 S.Ct. at 1552 (quoting *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985) (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1189, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963)))).

[6]*See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (a state law relates to an employee benefit plan and is preempted "if it has a connection with or reference to such a plan"). This language is "expansive," *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552-53, 95 L.Ed.2d 39 (1987), and "broadly worded," *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 137-40, 111 S.Ct. 478, 482-83, 112 L.Ed.2d 474 (1990).

or reference to airline "rates, routes, or services' are preempted" under section 1305. *Id.*

As a necessary consequence of its broad interpretation, the Court rejected the argument that section 1305 preempts the states only from actually prescribing rates, routes, or services. --- U.S. at ---- - ----, 112 S.Ct. at 2037-38. The Court also rejected the notions that "only state laws specifically addressed to the airline industry are preempted" and that "preemption is inappropriate when state and federal law are consistent." *Morales,* --- U.S. at ----, 112 S.Ct. at 2038. Laws of general applicability, even those consistent with federal law, are preempted if they have "the forbidden significant effect" on rates, routes or services. --- U.S. at ----, 112 S.Ct. at 2039.

*Morales* acknowledged, however, that "[s]ome state actions may affect [airline services] in too tenuous, remote, or peripheral a manner" to have preemptive effect. *Morales,* --- U.S. at ----, 112 S.Ct. at 2040 (quoting *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). Refusing to state exactly where the line would be drawn in a close case, the Court observed that the facts before it presented no close question of the connection between the regulation and air fares.

While under *Morales* the scope of state laws that "relate to" services must be broadly interpreted, the nature of the "services" preempted by § 1305(a) is more narrow than might at first be supposed. Hodges contends that "services" must be so narrowly interpreted as to preempt *no* common law tort or negligence cause of action. Delta argues the contrary, citing a dictionary definition of "services" as "useful labor that does not produce a tangible commodity." Webster's Ninth New Collegiate Dictionary 1076 (1990). We do not agree completely with either position.

Considering the definition of "services" that is most plausible in light of the ADA's purpose and historical regulatory antecedents, it appears that "services" is not coextensive with airline "safety". Therefore, insofar as state law or regulation imposes liability on airlines for breaching tort duties related to the safety of persons, it should not be preempted by § 1305(a).[7] The intent of this distinction is to secure by federal preemption the benefits of economic deregulation of the airline

---

[7]This ruling intimates no opinion concerning the possible preemptive effect of FAA safety regulation of aircraft and carriers. *See Public Health Trust of Dade Cty., Fla. v. Lake Aircraft, Inc.,* 992 F.2d 291 (11th Cir.1993). No such issue has been presented in this case. We also have no occasion to decide here whether and to what extent property damage claims are preempted by § 1305.

industry, while maintaining the traditional role of state law in adjudicating bodily injury claims.

Carefully read, *neither* Delta's definition of "services" nor others in the dictionary are open-ended. Webster's Third New International Dictionary (1976) adds some of the following definitions:

> An action or use that furthers some purpose; supply of needs [*e.g.,* a vending machine for the *service* of passersby]; railroads and telephone companies produce *services*—useful labor that does not produce a good; provision for conducting a public utility [*e.g.,* air freight *service* ]; regularly scheduled trip on public transportation ( [free air *services* ] ).

"Services" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

This definition of services is consistent with congressional intent regarding the ADA, with the CAB's understanding of the ADA, and with other sections of the statute. Significantly, neither the ADA nor its legislative history indicates that Congress intended to preempt the application of general tort law to personal physical injury inflicted by an airline while providing its services, or that Congress even considered such preemption.[8] "This silence takes on added significance in light of Congress's failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct."[9]

The CAB's statements implementing the ADA strongly support our view that the ADA was

---

[8]*Compare* the ADA with ERISA legislation, in which Congress provided several federal causes of action to replace the preempted state causes. *See Pilot Light,* 481 U.S. at 43-44, 107 S.Ct. at 1551.

[9]*Silkwood,* 464 U.S. at 251, 104 S.Ct. at 623 (citing *United Constr. Workers v. Laburnum Constr. Corp.,* 347 U.S. 656, 663-64, 74 S.Ct. 833, 836-38, 98 L.Ed. 1025 (1954)).

concerned solely with economic, not safety deregulation. The Board concluded that

> preemption extends to all of the economic factors that go into the provision of the *quid pro quo* for passenger's [sic] fare, including flight frequency and timing, liability limits, reservation and boarding practices, insurance, smoking rules, meal service, entertainment, [and] bonding and corporate financing.[10]

Following passage of the ADA, the CAB took the position that the states are preempted from regulating the kinds and amounts of insurance that carriers are required to have,[11] but Department of Transportation regulations continue to require that airlines maintain insurance "for bodily injury to or death of a person, or for damage to property of others, resulting from the carrier's operation or maintenance of the aircraft in air transportation provided under its authority from the Board."[12] If liability for personal injuries were preempted, such insurance would hardly be necessary, because there is no federal compensation scheme for injuries to airline passengers.

That Congress did not intend section 1305 to preempt all state tort claims for personal injury is bolstered by the continued existence of the preemption saving clause. Section 1506 of the FAA provides that "[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C.App. § 1506. Before the ADA, this section permitted not only limited economic regulation of intrastate flights, but also enabled the states to enforce their own general laws against the airlines.[13]

---

[10]44 Fed.Reg. 9948, 9951 (Feb. 15, 1979). The CAB also opined:

> [A] state may not interfere with the services that carriers offer in exchange for their rates and fares. For example, liquidated damages for bumping (denial of boarding), segregation of smoking passengers, minimum liability for loss, damages and delayed baggage, and ancillary charges for headsets, alcoholic beverages, entertainment, and excess baggage would clearly be "service" regulation within the meaning of section 105.

*Id.*

[11]Immediately after the promulgation of the ADA, the CAB realized that the transition from state to federal regulation would take time. Liability insurance rules varied among the states. As an interim rule the Board adopted as their own the existing state regulations on minimum liability insurance. *See id.*

[12]14 C.F.R. § 205.5(a) (1992).

[13]*See Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 300, 96 S.Ct. 1978, 1985, 48 L.Ed.2d 643 (1976).

After the passage of the ADA, the preemptive reach of section 1305(a) has curtailed the saving power of section 1506,[14] but since Congress left that section intact, we cannot assume that Congress meant completely to undermine the saving clause.

Finally, unlike the NAAG Guidelines in *Morales,* enforcement of tort remedies for personal physical injury ordinarily has no "express reference" to services as defined above. *See Morales,* --- U.S. at ----, 112 S.Ct. at 2039. Consequently, enforcement of such tort duties normally will not have "the forbidden significant effect" on airline services. *Id. Morales* relied in part on the fact that the state restrictions on airfare advertising had a significant economic effect on fares. Generally, however, state tort laws concerning safety can be enforced consistently with and distinctly from the services that Congress deregulated.

Unfortunately, the result this panel advocates cannot be squared with a previous unpublished opinion of our court in *Baugh v. Trans World Airlines, Inc.,* 915 F.2d 693 (1990). There, the court affirmed the dismissal of a passenger's claim that during a flight from Houston to New York, a stewardess stomped on her foot and injured her. This court reasoned that the manner in which a flight attendant performs her work "arises out of the services" afforded passengers by TWA and is therefore preempted by § 1305. *Baugh* is inconsistent with the present case, because negligently stomping on a passenger's foot bears on passenger safety but only tenuously relates to the airline's services. We are bound by *Baugh.* This circuit has considered its unpublished opinions to be binding precedent, although we discourage their citation. Fifth Circuit Local Rule 47.5.3.

Even if *Baugh* did not appear to control this case, our vindication of airline safety claims under state law *would not* extend to all state tort claims. To permit any tort suit to be filed simply because it is plausible under state law could conflict with the deregulation of "rates, routes and services." Two examples of preemption will suffice. In *O'Carroll v. American Airlines, Inc.,* 863 F.2d 11 (5th Cir.), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989), the plaintiff and his cousin were removed from a commercial airline flight because they were loud, boisterous, and intoxicated. 863 F.2d at 12. O'Carroll sued, alleging that he was wrongfully evicted

---

[14]*See Morales,* --- U.S. at ----, 112 S.Ct. at 2034.

from the flight. This court vacated O'Carroll's sizeable jury verdict, holding that his state law claims were preempted by section 1305. In *O'Carroll,* we did not discuss the scope of section 1305 because the state law claims arising from the alleged wrongful exclusion undeniably related to the services provided by the airline. Enforcement of O'Carroll's state law claims would result in significant *de facto* regulation of the airlines' boarding practices and, moreover, would interfere with the implementation of federal regulations granting the airlines substantial discretion in this matter.

Similarly, if we applied § 1305 unencumbered by *Baugh,* the tort and contract claims asserted by the plaintiff in *West v. Northwest Airlines,* 995 F.2d 148 (9th Cir.1993) would be preempted under our interpretation of "services". Plaintiff West sued after he was "bumped" from the overbooked airline flight for which he had reserved a seat. After remand for reconsideration in light of *Morales,* the Ninth Circuit held, over a dissent, that West's state law claims were too tenuously connected to "rates, routes and services" to be preempted by § 1305. The majority did find West's punitive damage claim preempted. Under either *Morales* or the analysis we would prefer, it is difficult to see how a lawsuit for overbooking would not "relate to" airline "services."

## HODGES' CLAIMS

Hodges alleged that Delta was negligent in allowing the case of rum to be stowed in the overhead storage bin. This tort claim for personal injury has no specific "reference to" airline services. *See Morales,* --- U.S. at ----, 112 S.Ct. at 2039; *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900. Nor would enforcement of her claim significantly affect Delta's services, as defined above. As other cases have recently held, this type of claim does not relate to Delta's services and is not preempted by section 1305. *See Public Health Trust of Dade Cty., Fla., v. Lake Aircraft, Inc.,* 992 F.2d 291 (11th Cir.1993); *Margolis v. United Airlines, Inc.,* 811 F.Supp. 318 (E.D.Mich.1993).

Nevertheless, under *Baugh,* we are compelled to affirm and to suggest en banc review.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.