Betty A. CHOUEST, wife of/and
Jefferson Chouest, Sr.

v.

AMERICAN AIRLINES, INC., et al.

Civ. A. No. 93–3306.

United States District Court,
E.D. Louisiana,
Section G.

Nov. 30, 1993.

Stephen M. Chouest of Stephen M. Chouest and Associates, Metairie, LA, for plaintiffs.

Robert E. Kerrigan, Jr. and Karen W. Roby of Deutsch, Kerrigan and Stiles, New Orleans, LA, for defendants.

### MEMORANDUM AND ORDER

SEAR, Chief Judge.

*Background*

Plaintiffs, Jefferson Chouest and Betty Chouest, originally brought this action in state court against defendants American Airlines (American), Trafalgar Tours of Europe, Ltd. (Trafalgar), and United States Aviation Underwriters, Inc. (Underwriters).[1] Plaintiffs' claims arise from injuries allegedly sustained by Jefferson Chouest while in Europe on an "American Flyaway Vacations Tour." According to plaintiffs, Jefferson Chouest was injured when the door of a tour bus closed on his arm at a freeway stop in Germany, during part of the ground transportation provided in conjunction with the vacation package.

The action was removed by American on October 6, 1993, on grounds of diversity of citizenship and federal question jurisdiction. Plaintiffs have filed a motion to remand this action to state court, arguing that the court lacks subject matter jurisdiction over the action and that removal was improper because defendant failed to satisfy the procedural requirement that all defendants join in the removal. Plaintiffs also request the appropriate costs and fees incurred in connection with their motion to remand.

*Discussion*

Section 1441(a) of Title 28 of the United States Code permits defendants to remove to the appropriate federal court any civil action brought in state court over which the United States district courts have original jurisdiction. Once an action has been removed, there are two grounds for remanding the action to state court: (1) procedural defects in the removal, e.g., failure of all served defendants to join in the removal; and (2) when the district court finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The plaintiffs have moved to remand for both deficiencies. Because I conclude that the court lacks subject matter jurisdiction, I do not reach plaintiffs' assertion that the removal was procedurally deficient.

According to 28 U.S.C. § 1447(c), "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." It is well established that the party invoking the jurisdiction of the federal court has the burden of proving the exercise of such jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In a removal case, the removing party bears that burden. Defendant American removed this

---

1. On September 16, 1993, plaintiffs filed an amended petition in state court adding as defendants Trafalgar U.S.A. and/or Tracon, Ltd.

**414**

action to federal court and therefore bears the burden of demonstrating the jurisdictional basis for the removal.

### A. Diversity Jurisdiction

Defendant contends that removal was proper under 28 U.S.C. § 1441(a) because the court has diversity jurisdiction over plaintiff Jefferson Chouest's claim pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction over plaintiff Betty Chouest's claim under 28 U.S.C. § 1367. For a district court to have original jurisdiction over an action founded on diversity of citizenship, the parties must be of diverse citizenship and the matter in controversy must exceed the sum or value of $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Plaintiff concedes that the parties are of diverse citizenship, but argues that neither plaintiff's claim exceeds the $50,000 jurisdictional amount requirement.

■ As is true of the other jurisdictional requirements for removal, the amount in controversy is determined on the basis of the record as it existed at the time the defendant sought to remove the action. *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961). The party invoking the federal court's jurisdiction must show to a legal certainty that each plaintiff's claim is not less than the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 285, 58 S.Ct. 586, 588, 82 L.Ed. 845 (1938); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The removing party bears that burden regardless of the status of discovery, the number of plaintiffs, or any problems created by the state procedural statutes.

■ Defendant asserts that the claim of Jefferson Chouest exceeds $50,000 for purposes of diversity jurisdiction. In the state

court petition, Mr. Chouest seeks damages for the loss of enjoyment of his European vacation, medical expenses incurred as a result of the injury to his arm, and mental anguish and emotional distress.[2] In accordance with Louisiana Code of Civil Procedure article 893, however, he does not specify the amount of damages he is seeking.[3] Federal courts that have been presented with complaints lacking averments of a specific amount in controversy are required to look beyond the complaints to ascertain whether federal jurisdiction exists. Courts have handled this problem in a variety of ways, such as looking to the petition for removal, making an independent evaluation of the monetary value of the claim or allowing the defendant to make a showing, or remanding the action. *Coleman v. Southern Norfolk*, 734 F.Supp. 719, 720–21 (E.D.La.1990) (*citing* C. Wright, A. Miller & E. Cooper, 14A *Federal Practice and Procedure* § 3725 at 423 (1985)).

■ Defendant relies on plaintiffs' state court petition, a written medical diagnosis of Mr. Chouest's condition, and a quantum study of the diagnosed conditions to establish that Mr. Chouest claims an amount exceeding $50,000. However, the court is not convinced to a legal certainty that Mr. Chouest's claim is not for less than $50,000. The general allegations contained in the petition are not sufficient to support defendant's argument.[4] Nor is the written diagnosis on which defendant relies dispositive; although the written diagnosis lists various conditions, including carpal tunnel syndrome,[5] it is impossible to ascertain from this document alone whether any of the conditions preexisted the incident in question. Finally, because the quantum study is based upon the conditions listed in the written diagnosis, its usefulness is likewise limited. For these reasons, I conclude that defendant has not carried its burden of demonstrating that the

---

2. *See* Notice of Removal, Exhibit A.

3. The Louisiana Code of Civil Procedure prohibits plaintiffs from including a demand for a specific monetary amount. La.Code Civ.Proc. 893(A)(1).

4. *See* Notice of Removal, Exhibit 1. Specifically, he alleges "serious, permanent and disabling in-

juries to his right, dominant arm ... which has resulted in permanent nerve damage ... which have caused him to suffer past pain and medical expenses and which will continue to cause him present and future pain, suffering and mental anguish, and/or medical expenses."

5. *See* Notice of Removal, Exhibit B.

court has diversity jurisdiction over Mr. Chouest's claim.

■ Moreover, even assuming Mr. Chouest's claim exceeds the jurisdictional amount, defendant has not established that the court has subject matter jurisdiction over Mrs. Chouest's claim. Defendant concedes that Mrs. Chouest's claim does not independently meet the jurisdictional amount but asserts that under 28 U.S.C. § 1367 she is a pendant party over whom the court has supplemental jurisdiction.[6] According to § 1367, the district courts have supplemental jurisdiction over all claims that are so related to claims over which the court has original jurisdiction that they form "part of the same case or controversy." 28 U.S.C. § 1367(a). I have previously interpreted § 1367 to provide for supplemental jurisdiction over one plaintiff's non-federal claims against nondiverse defendants, but not over another plaintiff. *Cheramie v. Texaco, Inc.*, 1991 WL 236784 *2, 1991 U.S.Dist. LEXIS 15616 *5 (E.D.La.1991) ("one plaintiff cannot tag onto the claim of another plaintiff pursuant to pendant party jurisdiction and effectively abrogate the rule that each plaintiff's claim must exceed the jurisdictional amount"). Recognizing that there is some conflict of opinion in the district courts on this issue;[7] I stand by my interpretation of 28 U.S.C. § 1367 and conclude that the doctrine of pendant party jurisdiction does not apply to Mrs. Chouest's claim.

## B. Federal Question Jurisdiction

Defendant further contends that removal was proper because the court has federal question jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331. As is true of original federal question subject matter jurisdiction, a court has federal question jurisdiction over an action for purposes of removal jurisdiction if its adjudication depends on the application of "the Constitution, treaties or laws of the United States." 28 U.S.C. § 1331.

■ Defendant maintains that the court has federal question jurisdiction over plaintiffs' state law claims because they are expressly[8] pre-empted by the Airline Deregulation Act of 1978 (ADA), 49 U.S.C.App. § 1301 *et seq.* (1988).[9] As part of the ADA, Congress expressly preempted the application of state law to certain areas of the airline industry. The statute provides, in relevant part:

> [N]o state or political subdivision thereof [except Alaska] ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C.App. § 1305(a)(1) (1988). Defendant asks the court to apply this statute to the operations of American Airlines, a conceded air carrier, because plaintiffs' claims relate to "services" provided by American.[10] The alleged "service" at issue in this action is the transportation exclusively by bus of individuals as part of a European vacation package arranged, in some part, by American. The question whether a particular state action is preempted by federal law is one of Congressional intent. Thus, I must determine whether Congress intended to preempt state law actions arising from injuries sustained during an air carrier's provision of

---

6. *See* Supplemental Memorandum in Opposition to Plaintiffs' Motion to Remand, at 7–13.

7. *See*, e.g., *Garza v. National American Ins. Co.*, 807 F.Supp. 1256 (M.D.La.1992) (concluding that, in spite of legislative history suggesting otherwise, § 1367 provides for supplemental jurisdiction over the claims of plaintiffs which do not independently meet the amount in controversy requirement).

8. Congress may preempt state authority in any one of three ways: (1) by expressly stating that state law is preempted; (2) by regulating an area so pervasively that preemption is inferred; and (3) by enacting a statute that so conflicts with existing state law as to render compliance with both impossible. *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985); *Hodges v. Delta Airlines*, 4 F.3d 350, 352 (5th Cir.1993).

9. Notice of Removal, at 3.

10. Notice of Removal, at 3.

ground transportation as part of a vacation package.

Defendant relies on the Supreme Court's recent decision in *Morales v. Trans World Airlines, Inc.,* —— .U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) to support its preemption argument.[11] The *Morales* Court held that the use of the words "relating to rates routes and services" in the ADA preemption clause should be interpreted broadly to preempt state laws that have "a connection with or reference·to" airline rates, routes or services. *Morales,* —— U.S. at ——, 112 S.Ct. at 2037.[12] Despite this broad interpretation, the Court cautioned that "[s]ome state actions may affect [airline services] in too tenuous, remote, or peripheral a manner" to have preemptive effect. *Id.* at ——, 112 S.Ct. at 2040. While *Morales* is certainly relevant to the determination of preemption, it does not resolve the issue here. The *Morales* opinion addresses whether a certain airline service "relates to" or "affects" airline services, but it does not define the nature of the "services" referred to in § 1305. *See Hodges,* 4 F.3d at 353. Regardless of the scope of the "relating to" language, a cause of action that does not arise out of the air carrier's "services" is not preempted by the ADA.

Defendant also relies on an unpublished opinion of the Fifth Circuit which held that a state law tort claim for personal injuries is preempted by § 1305 if the claim relates to the airline's rates, routes or services. *Baugh v. Trans World·Airlines,* 915 F.2d 693 (5th Cir.1990). The *Baugh* court affirmed the dismissal of·a passenger's claim that during a flight from Houston to New York, a stewardess stepped on her foot, breaking her ankle. The court reasoned that the manner in which a flight attendant performs her work "arises

out of. the services" provided by the air carrier and was preempted by § 1305. In a very recent decision the Fifth Circuit followed *Baugh* but criticized at length the expansion of § 1305 preemption to cover tort duties related to the safety of airline passengers and advocated a more narrow interpretation of the nature of services preempted by § 1305. *Hodges v. Delta Airlines,* 4 F.3d 350 (5th Cir.1993).[13]

Like the Supreme Court's decision in *Morales,* the Fifth Circuit's decision in *Baugh,* although informative, is not dispositive of the issue presently before the court. *Baugh* involved an injury sustained by a airline passenger due to the alleged negligence of a flight attendant. This action involves an injury sustained by a passenger on a tour bus due to the alleged negligence of the bus driver. The issue I must decide is whether ground transportation services, or an air carrier's procurement of ground transportation services for its customers, are "services" within the meaning of § 1305 simply because they are part of a vacation package provided by an air carrier.

The only case defendant has cited, and the only case that I have found, in which § 1305 preemption has been applied to ground transportation conducted by an air carrier is a case decided by the Ninth Circuit. In *Federal Express v. California Public .Utilities Commission,* 936 F.2d 1075 (9th Cir. 1991), Federal Express, an air carrier, sued the defendant commission seeking a declaration that regulations enforced against Federal Express' landbased trucking operations were preempted by § 1305 of the ADA. The Ninth Circuit, reversing the district court, held that because the trucking operations were an integral part of Federal Express' air

**11.** Notice of Removal, at 3; Reply to Plaintiffs' Motion to Remand, at 8.

**12.** In *Morales,* the Supreme Court found that the ADA preempted states'. efforts· to use their consumer protection statutes to prohibit allegedly deceptive airline fare advertisements because this use of the state statutes related to airline fares. *Morales,* —— U.S. at ——, 112 S.Ct. at 2040.

**13.** In *Hodges,* an airline passenger brought a tort claim against an airline for injuries she sustained

when a case of rum that had been negligently stored in an overhead compartment fell from the compartment and severely injured her arm. The *Hodges* court concluded that "neither the ADA nor its legislative history indicates that Congress intended to preempt the application of general tort law to personal physical injury inflicted by an airline while providing its services," but held that it was bound by the decision in *Baugh* and found preemption. 4 F.3d at·354. In light of its disagreement with *Baugh,* the panel deciding *Hodges* suggested en banc review.

carrier operations, regulation of the trucking operations was preempted by the ADA. *Id.* at 1079. The court found that one of Congress' purposes in amending the Federal Aviation Act in 1978 was the "encouragement and development of an expedited and integrated all-cargo air service system." *Id.* (*citing* 49 U.S.C.App. § 1302(b)(1) and (2)). The court found Federal Express' system to be such an integrated system because "the trucking operations [were] not some separate business venture" but were "part and parcel of the air delivery system" and that "the use of the trucks depend[ed] upon the conditions of air delivery" and their delivery timing was "meshed with the schedules of the airplanes." *Id.* at 1078.

Even assuming I were to follow the approach advanced by the Ninth Circuit, the present action is distinguishable from the *Federal Express* case in several important ways. The *Federal Express* case dealt with state economic regulation, whereas this action deals with state law remedies in tort and contract for personal injury. More significantly, the *Federal Express* case involved all-cargo service,[14] whereas this action involves the carriage of persons, rendering unhelpful the statutory language relied on by the Ninth Circuit as evidence of Congress' intent.[15] Defendant has failed to identify, and I am unable to find, any language in the statute or in the legislative history that supports defendant's preemption argument. Finally, defendant has in no way demonstrated that the ground transportation provided as part of American's European vacation package is "integral" to the air transportation services provided by American as required by the Ninth Circuit in the *Federal Express* decision.

The record suggests that plaintiff entered into a contract with American for a comprehensive European vacation package under which American was to fly plaintiffs to Europe and to arrange for plaintiffs' lodging and ground transportation in Europe, as well.[16] American contracted with other entities to provide the actual lodging and ground transportation.[17] Essentially, the role American chose to play was similar to that of a travel agent. There is nothing in the record that suggests that the ground transportation portion of plaintiffs' vacation was essential or integral to the air transportation services provided by American. Admittedly, American must owe some of its success to the use of "package" deals such as the one it provided plaintiffs. But I do not believe that Congress intended to exempt from the application of state laws any "transportation" services American wishes to provide, including, e.g., tour bus services or car rental services. Therefore, I conclude that defendant has not carried its burden of showing preemption so as to provide the court with jurisdiction under 28 U.S.C. § 1331.

Because I conclude that the court lacks subject matter jurisdiction over plaintiffs' claims, I need not address plaintiffs' argument that defendant's removal was procedurally deficient.

Plaintiffs have requested attorney's fees and costs incurred in connection with their motion to remand. Although I conclude that the suit was not removable as one presenting a federal question or satisfying diversity of citizenship requirements, defendants had sufficient reason to assert removal under § 1441(a). An award of attorney's fees and costs would therefore be inappropriate.

Accordingly,

IT IS ORDERED that this action IS REMANDED to the state court from which it was removed.

---

14. The ADA defines all-cargo service as "the carriage ... of only property or mail, or both." 49 U.S.C.App. § 1301(11).

15. The provisions the Federal Express court relied on to discern Congress' intent dealt with air-cargo carriers. *See Federal Express*, 936 F.2d at 1079.

16. *See* Plaintiff's Memorandum in Support of Motion to Remand, at 1–2; Defendant's Reply Memorandum in Opposition to Motion to Remand, at 1.

17. For example, Trafalgar Tours of Europe provided the actual ground transportation services. Memorandum in Support of Motion to Remand, at 3.

IT IS FURTHER ORDERED that plaintiffs' request for attorney's fees and costs IS DENIED.