[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF LAW ON DEFENDANT'S MOTION TO DISMISS
The plaintiffs have brought this action against the defendant Continental AirLines for damages they allegedly incurred as a result of the defendant airline's cancellation of their membership in its so-called "One pass" program. This program allows a member to accrue mileage for each flight taken and to use the credits, subject to the conditions of the program, towards rewards for free air travel, upgrades on future flights and discounts on hotel stays and rental cars. CT Page 1705
In the first count the plaintiff R. William Vine alleges he suffered financial expense and emotional distress as a result of the defendant's negligent actions in cancelling his membership. In the second count the plaintiff alleges the actions in cancelling I his membership violated the Connecticut Unfair Trade Practices Act, § 42-110 et seq. The third count alleges that the defendant's action were a breach of contract.
The plaintiff Faye Vine in the fourth, fifth and sixth counts makes the same claims in separate counts in the same order as the plaintiff R. William Vine. The defendant has filed a motion to dismiss arguing the court has no subject matter jurisdiction over the claims made by the plaintiffs in their first, second, fourth and fifth counts. In this case the lack of subject matter jurisdiction can be tested by the allegations of the complaint,Upson v. State, 190 Conn. 622, 624, 625 (1983). There is no need to have an evidentiary hearing and neither side has asked for such a hearing.
1.
As to the first count, the defendant's argument is that the Federal Aviation Administration Authorization Act of 1994 (the act), specifically Chapter 417 of that act preempts state attempts state attempts to enforce laws which relate to an air carrier's "prices, routes and services". More precisely § 49 U.S.C. App. § 41713 of Chapter 417 states in relevant part at subsection (b)(2):
 "A state . . . .may not enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this support."
The defendant makes a federal preemption claim on all the counts it is challenging and has relied on two United States Supreme Court cases, Morales v. Trans World Airlines, Inc.,504 U.S. 374 (1992) and American Airlines v. Wolars, 115 S.Ct. 817,130 L.Ed.2d 715 (1995). Both cases involved an interpretation of Section 1305 of the Airline Deregulation Act of 1978 which read:
 "No state shall enact or enforce any law rule, regulation, standard or other provision having the force and effect of law relating to rates, CT Page 1706 routes or services of an air carrier having authority under subchapter IV of this chapter to provide air transportation.
The recodification of this section into § 41713 of the present act worked no substantive change in the law so the holdings ofMorales and Wolens case are applicable to the preemption claim now before the court. First it should be said that the state enactment and enforcement of a law, rule or regulation applies to state statutes, administrative regulations and opinions and actions by state courts. If such were not the case the ability of the federal government to act within an area it has chosen to act in would be seriously compromised and the purposes behind the Supremacy Clause which is aimed at enforcing this federal right would be defeated.
In Morales the plaintiff who was the attorney general of Texas brought an action to enforce guidelines adopted by a national association of state attorney generals against the defendant airline. The guidelines contained detailed standards governing the content and format of airline advertising, the awarding of premiums to so-called "frequent flyers" and the payment of compensation to passengers who voluntary yield their seats on overbooked flights, Id., page 379. The court reasoned that § 1305(a)(1) had a broad preemptive purpose dictated by the phrase in the statute that preempted state action in enacting and enforcing "any law, rule, regulation standard or other provision . . . relating to rates, routes or services of any air carrier, Id. p. 383 (the court emphasized the underlined words in its analysis). The court for example rejected the notion that § 1305(a)(1) only preempts the states from actually prescribing rates, routes or services", Id. p. 385. The court held the state guidelines were preempted. It said:
 "To ensure that the States would not undo federal deregulation with regulation of their own the ADA (Air Deregulation Act), included a preemption provision prohibiting the states from enforcing any law `relating to rates, routes, or services' of any air carrier. § 1305(a)(1)" 504 U.S. at 378-379.
In the later case of American Airlines Inc. v. Wolens, supra. the court relied on the broad reading given by Morales to the preemption statute. In that case class actions were brought in state court by passenger participants in a frequent flier program. Such passengers earned mileage credits and could exchange these CT Page 1707 credits for flight tickets or class-of-service upgrades. The passengers complained the airline had modified the frequent flyer program retroactively imposing limitations on available seats and restrictions on dates on which the credits could be used. The passengers maintained in their state court suit that the retroactive imposition of these restrictions violated the state's consumer fraud and deceptive business practice act and (2) constituted a breach of contract.
The court held that § 1305(a)(1) allows room for state enforcement of contract terms set by the particular parties themselves but also held that the preemption statute barred claims brought under the state consumer fraud act.
The court reasoned the contract claim should stand because the deregulation act wasn't meant "to shelter airlines from suits alleging no violation of state imposed obligations but seeking recovery solely for the airline's alleged breach of its own self-imposed undertakings . . . terms and conditions airlines offer and passengers accept are privately ordered obligations `and thus to not amount to a state's enactment or enforcement (of) any law, rule, regulation or standard or other provision having the force and effect of law within the meaning of (§ 1305(a)(1).'",130 L.Ed.2d at pp. 725-726.
But the court at pp. 724-725 took a very different view of that aspect of the plaintiffs' claims based on a violation of the Illinois Consumer Fraud Act. The court noted that that act:
 . . ."serves as a means to guide and police marketing practices of the airlines; the Act does not simply give effect to bargains offered by the airlines and accepted by airline customers. In light of the full text of the preemption clause and of the ADA's (Airline Deregulation Act's) purpose to leave largely to the airlines themselves, and not to all the states, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services, we conclude that § 1305(a)(1) preempts plaintiff's claims under the Illinois Consumer Fraud Act."
The first and the fourth count in this case allege the defendant airline's advertisement was false and misleading in that CT Page 1708 it never stated milage credit could be revoked unilaterally by an unsubstantiated claim that a One Pass program holder violated the terms of the program and that unilaterally and without warning negligently closed the plaintiff from the program.
In the second and fifth count the plaintiff claims a CUTPA violation. It is alleged that advertisement of the program did not give warning that a mileage credit earned could be unilaterally revoked by unsubstantiated claims of noncompliance with program rules. The courts further allege the defendant intentionally accused the plaintiff of the violations for the purpose of revoking substantial property rights he had accrued in the program.
It seems clear that a negligence or CUTPA theory of liability as made here relate to rates and services of the airline. A state providing a court system prepared to award recovery under such theories would necessarily be setting up general standards of conduct implicated by these causes of action which would in effect "guide and police marketing practices of the airlines's and have a direct effect on a service — the One Pass Program — that they provide to customers.
This is self-evident in the negligence claim but also true as to a CUTPA claim requiring as it does the application of the so-called "cigarette rule" which sets forth three criteria by means of which a practice is "unfair", McLaughlin Ford, Inc. v. Ford MotorCo., 192 Conn. 558, 567-568 (1984).
It would not seem to require any reference to authority to conclude that a frequent flyer program such as the "One pass program" discussed here relates to "price" or "service" as those terms are used in 49 U.S.C. § 41713. Such programs are part of the overall price structure offered to consumers by airlines and are a service provided to airline customers.
The cases cited by the plaintiff do not require a different analysis. In Stewart v. American Airlines, Inc., 776 F. Sup. 1194
(S.D. Tex. 1991) the court held a passengers state law tort claim for physical injury incurred when the nose wheel of the plane deflated was not preempted. The court held the plaintiff's claims did not arise out of "services" provided to the plaintiff passenger. The court noted that preemption has been found only where the "services" referred to in § 1305 involved services provide by individual airline employees directly to passengers such as ticketing, boarding, in-flight service and the like. Injuries such CT Page 1709 as those claimed here said the court are like those arising out of an aircrash.
This is a rather conclusory opinion and the reasoning ofHodges v. Delta Airlines, Inc., 4 F.3d 350, 354 (CA 5, 1993) is persuasive on how preemption should be analyzed in personal safety state tort claims:
 Considering the definition of "services" that is most plausible in light of the ADA's purpose and historical regulatory antecedents, it appears that "services" is not coextensive with airline "safety". Therefore, insofar as state law or regulation imposes liability on airlines for breaching tort duties related to the safety of persons, it should not preempted by § 1305(a). The intent of this distinction is to secure by federal preemption the benefits of economic deregulation of the airline industry, while maintaining the traditional role of state law in adjudicating bodily injury claims. . . .
 "Services" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.
Relying on Hodges a case like Fenn v. American Airlines, Inc.839 F. Sup. 1218 (S.D. Miss 1993) held that an airline passenger's CT Page 1710 claim for false imprisonment and slander were not preempted since they didn't involve "services" and in any event did not sufficiently "relate to" those services. The false imprisonment claim arose from the airline's detention of the plaintiff after he was accused of stealing another passenger's ring, the slander claim arose from an airline employee yelling into an open corridor "Is this the man who took your ring"? The court held at page 1223 allegations of slander and false imprisonment are not "services" delivered to customers. They do not represent as Hodges notes a "bargain or agreement" a delivery or something from provider to customer. Besides permitting this type of claim does not have a significant economic impact on airlines, a consideration the Fenn Court relied on from its interpretation of Morales — in other words the state claim did not have such a sufficient impact on services so as to be held to "relate to" such services, cf Bayne v.Adventure Towns Inc., 841 F. Sup. 206 (ND Tex. 1994).
None of these cases are applicable here as a means to avoid concluding there was preemption. Obviously the One pass program was a bargained for matter between the airline passenger and all other passengers also in the program. Furthermore the economic effect on the airlines in allowing the type of tort claim and state statutory claims made here could be enormous.
Finally the preemption statute (§ 41713) must be read in light of the immediately preceding provision of the act, § 41712. That statutory subsection reads as follows:
 § 41712 Unfair and deceptive practices and unfair methods of competition
 On the initiative of the Secretary of Transportation or the complaint of an air carrier, foreign air carrier, or ticket agent, and if the Secretary considers it is in the public interest, the Secretary may investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation. If the Secretary, after notice and an opportunity for a hearing, finds that an air carrier, foreign air carrier, or ticket agent is engaged in an unfair or CT Page 1711 deceptive practice or unfair method of competition, the Secretary shall order the air carrier, foreign air carrier, or ticket agent to stop the practice or method.
Thus not only is there a remedy for general practices found to be unfair, deceptive or an unfair method of competition, Wolens
preserves a contract remedy for individual passengers having breach of contract claims. More to the point, given § 41712 chaotic conditions would result in this industry if 50 state jurisdiction could through their negligence law or consumer fraud law in effect establish their own notions of fairness, anti-competitive or deceptive behavior. Whether one agrees with federal deregulation or not state courts can't express that disagreement by ignoring federal preemption laws and thus making the federal policy ineffective. The motion to dismiss the first, second, fourth and fifth counts is granted.
Thomas Corradino, Judge