**Scott B. MARLOW, Plaintiff,**

v.

**AMR SERVICES CORP. and AMR Corp., Defendants.**

**Civ. No. 93–00847 SPK.**

United States District Court, D. Hawai'i.

Nov. 29, 1994.

Mary Blaine Johnston, Kula, Maui, HI, for plaintiff.

Robert S. Katz, Jeffrey S. Harris, Torkild-son Katz Jossem Fonseca Jaffe & Moore, Honolulu, HI, for defendants.

*ORDER GRANTING DEFENDANTS AMR SERVICES CORP. AND AMR CORP.'S MOTION TO DISMISS*

SAMUEL P. KING, Senior District Judge.

## I. BACKGROUND

Defendant AMR Services Corporation services and maintains the jetbridges used at the various airports throughout the State. It

is a subsidiary of Defendant AMR Corporation. Plaintiff Scott B. Marlow was hired by AMR Services in November 1992 to supervise the company's operations at the Kahului Airport on Maui. On December 31, 1992, while on workers compensated leave, Plaintiff informed Defendant AMR Services in writing of what he alleges were "health and safety violations he had noticed at the Kahului Jetbridge Maintenance facility, listing over 25 conditions he felt posed serious problems, and asking for a written response by close of business on January 4, 1993, as to how Defendants [sic] AMR Services was going to deal with and correct the problems." Complaint at ¶ 20. On January 4, 1993, after returning to work, Plaintiff was terminated.

On April 2, 1993, Plaintiff filed a complaint in the Second Circuit Court, State of Hawaii, alleging that he was fired by Defendants because of his raising of the "safety concerns," and in an attempt to prevent Plaintiff from reporting the purported safety violations to public bodies, in contravention of HRS § 378–61 et seq., Hawaii Whistleblowers' Protection Act ("HWPA"), and a clear mandate of public policy against such terminations, *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982).[1] The matter was subsequently removed to this Court based on diversity.

On October 11, 1994, Defendants filed a Motion to Dismiss and for Summary Judgment. The Motion to Dismiss is based on the grounds that Plaintiff's HWPA and *Parnar* claims are preempted by section 1305(a) of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C.App. § 1305(a)(1). *See* Memorandum in Support of Motion, at 1. The Motion for Summary Judgment seeks resolution of the issues on alternative grounds.

The matter came on for hearing on November 22, 1994. Mary Blaine Johnston appeared on behalf of Plaintiff. Jeffrey S. Harris and Robert S. Katz appeared on behalf of Defendants. At the hearing, the Court postponed argument on the Motion for Summary Judgment pending additional discovery, but heard argument on the Motion to Dismiss.

Having considered the memoranda and arguments of the parties, and being fully advised in the premises, the Court hereby GRANTS Defendants' Motion to Dismiss.

## II. DISCUSSION

■ Congress may preempt state authority in three ways: (1) by expressly stating that state law is preempted; (2) by regulating an area so pervasively that preemption is inferred; or (3) by enacting a statute that so conflicts with existing state law as to render compliance with both impossible. *Hillsborough County, Fla. v. Automated Medical Lab., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). In this case, Defendants argue that Congress has expressly preempted Plaintiff's HWPA and *Parnar* claims, both of which arise out of Plaintiff's termination allegedly for "whistleblowing", through section 1305(a) of the ADA.

Section 1305(a)(1) provides in part:

> ... [N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law **relating to rates, routes, or services of any air carrier** having authority under subchapter IV of this chapter to provide air transportation.

49 App.U.S.C.A. § 1305(a)(1) (emphasis added). Two issues arise from this statutory language: (1) whether Defendants must be "air carriers" in order for section 1305 preemption to apply; and, if not, (2) whether Plaintiff's state-law claims "relat[e] to ... services of an air carrier."

1. *Defendants Need Not Be "Air Carriers"*

■ Plaintiff contends that section 1305 preemption does not apply to his claims because Defendants are not "air carriers" within the meaning of the ADA. Defendants impliedly concede that they are not "air car-

---

1. The Complaint also alleged a violation of Haw. Rev.Stat. § 396–8(e) (Hawaii Occupational Safe-

ty and Health Law). That claim was dismissed on June 17, 1994 for lack of jurisdiction.

riers", but argue nevertheless that section 1305(a)(1) applies to non-air carriers as well. The Court agrees with Defendants' interpretation.

Nothing in the ADA suggests that section 1305(a) applies only to suits against an air carrier. Rather, section 1305(a) preempts the enforcement of any state laws that have a "connection with or reference to" airline rates, routes, or services. The language, legislative history, and structure of the ADA make it clear that, in enacting the ADA, Congress intended to assert federal control over the regulation of airline rates, routes, and services. Thus, in the Court's view, it is preposterous to assume that Congress intended to block the prosecution against air carriers of certain suits but allow those same suits to proceed against all others.

*Continental Airlines, Inc. v. American Airlines, Inc.,* 824 F.Supp. 689 (S.D.Tex.1993).

*Continental* involved a claim against the parent company of an air carrier as well as the air carrier itself for allegedly engaging in anti-competitive practices. Parent and air carrier both claimed that plaintiff's state-law claims were preempted by the ADA. Plaintiff argued that the parent company was not an air carrier, and thus the claims against it could not be preempted. The court rejected this argument. The actions of the parent company, though it was not an air carrier, involved air fare pricing. Therefore, the state laws which prohibited the alleged price fixing "related to" airline rates. *Id.* at 696–97.

While the *Continental* court was primarily concerned that plaintiff could avoid preemption merely by suing the corporate parent of an airline, the principle announced in *Continental* has wider applicability. The defendant need not be an air carrier so long as the state laws which prohibit defendant's alleged wrongdoing "relate to" airline routes, rates or services.

**2.** In *Morales,* the regulations being challenged were the National Association of Attorneys General guidelines on the content and format of

### 2. Plaintiff's HWPA and Parnar Claims "Relate to" Air Carrier "Services"

Section 1305(a)(1) provides for preemption of state laws **"relating to rates, routes, or services of any air carrier."** The ordinary meaning of the phrase "relating to" is a broad one. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, —— – ——, 112 S.Ct. 2031, 2036–37, 119 L.Ed.2d 157, 167 (1992).[2] Thus, state enforcement actions which have a "connection with or reference to airline 'rates, routes, or services' are preempted" by section 1305(a)(1). *Id.* at —— – ——, 112 S.Ct. at 2037, 119 L.Ed.2d at 167–68. The laws do not have to actually prescribe rates, routes, or services, or be specifically addressed to the airline industry, or be inconsistent with federal law. *Id.* at —— – ——, 112 S.Ct. at 2037–39, 119 L.Ed.2d at 168–69. However, state actions which affect airline rates, routes, or services in a too tenuous, remote, or peripheral manner do not have preemptive effect. *Id.* at —— – ——, 112 S.Ct. at 2041–41, 119 L.Ed.2d at 172.

While the "relating to" phrase is to be read broadly, *Morales* does not instruct on how to interpret the term "services." *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350 (5th Cir. 1993), *reh'g on banc granted,* 12 F.3d 426 (5th Cir.1994), offers some assistance on this issue.

In *Hodges,* plaintiff, a passenger on defendant Delta, was injured when the contents of an overhead bin fell on her arm. She sued, alleging state tort claims. Defendant argued that plaintiff's claims were preempted by the ADA. The court rejected this argument. "Services," the court stated, "is not coextensive with airline 'safety.'" *Id.* at 354. Thus, "insofar as state law or regulation imposes liability on airlines for breaching tort duties related to the safety of persons, it should not be preempted by § 1305(a)." *Id.*

In contrast, the court considered "ticketing, *boarding procedures,* food and drink, and baggage handling, in addition to the transportation itself," to be elements of "ser-

airline fare advertising. The Court held that the guidelines obviously "relate to rates" within the

vices". *Id.* (Emphasis added.)[3] Of course, boarding procedures are greatly affected by the service and maintenance of the jetbridges.

*Hodges* is consistent with the Ninth Circuit's decision in *Federal Express Corp. v. California Public Utilities Comm'n,* 936 F.2d 1075 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2956, 119 L.Ed.2d·578 (1992). In that case Federal Express, an air carrier, sued the California P.U.C. to prevent the P.U.C. from enforcing its regulations against Federal Express' trucking operations. The court held that the state regulations were preempted after finding that Federal Express' trucking operations were "integral to its operation as an air carrier." *Id.* at 1078.

■ Jetbridges are also an integral part of air carrier services, no matter who maintains them. Keeping the bridges in working order is critical to today's passenger air travel. Therefore, the Court finds that jetbridge maintenance and service is included within the meaning of carrier "services," as that term is used in section 1305(a).

■ The remaining question is whether Plaintiff's HWPA and *Parnar* claims have the requisite "connection with or reference to" air carrier services. *Morales,* 504 U.S. at —— – ——, 112 S.Ct. at 2037, 119 L.Ed.2d at 167–68. Both the HWPA and *Parnar* limit Defendants' ability to terminate at-will employees of jetbridge maintenance companies, whose work is integral to air services. Thus, they necessarily have connection with or reference to air carrier services. *See Belgard v. United Airlines,* 857 P.2d 467, 471 (Colo.App. 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1066, 127 L.Ed.2d 386 (1994).

Plaintiff contends that his claims do not have the requisite connection with or reference to air carrier services. The common theme in the cases cited by Plaintiff, however, is that they involve *passengers* asserting tort claims against the airlines. *Hodges v. Delta Airlines,* 4 F.3d 350 (5th Cir.1993);

*Bayne v. Adventure Tours USA, Inc.,* 841 F.Supp. 206 (N.D.Tex.1994); *Chouest v. American Airlines, Inc.,* 839 F.Supp. 412 (E.D.La.1993). Whether or not such claims should be preempted by the ADA, the Court finds the facts of·those cases to be sufficiently distinguishable so as not to alter the analysis above.

Therefore, the Court concludes that Plaintiff's HWPA and *Parnar* claims are preempted by section 1305(a)(1) of the Airline Deregulation Act. Accordingly, Defendant's motion to dismiss is hereby GRANTED.

·IT IS SO ORDERED.

---

meaning of section 1305(a)(1) and were therefore preempted.

**3.** Despite the court's analysis, it went on to hold that plaintiff's tort claims were preempted because it felt bound by a prior unpublished Fifth Circuit opinion.