**HUNTLEIGH CORPORATION**

v.

**LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS.**

Civ. A. No. 95–90–A.

United States District Court,
M.D. Louisiana.

Nov. 28, 1995.

358

Kermit L. Roux, III, Michael R. Allweiss, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, Louisiana, for Plaintiff.

Frank D. Blackburn, Baton Rouge, Louisiana, for Defendants.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on motions for summary judgment by both plaintiff and defendant. Oral argument is not necessary. Jurisdiction is based on 28 U.S.C. § 1331.

Plaintiff seeks a judgment under 28 U.S.C. § 2201 declaring that the provisions of the Louisiana Private Security Regulatory and Licensing Law, La.R.S. 37:3270–3298, are preempted by 49 U.S.C. § 1305(a)(1), former-

ly § 1305(a)(1) of the Airline Deregulation Act (ADA), and that with regard to its employees who perform pre-departure screening at airports, plaintiff is not bound by those state laws, or the November 9, 1994 sanctions imposed on plaintiff by defendant, the Louisiana State Board of Private Security Examiners (Board). Plaintiff also seeks an order enjoining the Board from enforcing either the Louisiana Private Security Regulatory and Licensing Law, or the Board's sanctions against them in the future. The issue before the court is whether Louisiana's Private Security Regulatory and Licensing Law, as applied to plaintiff's employees who perform pre-departure screening at airports, has been preempted by federal law.

### THE UNDISPUTED FACTS

Plaintiff contracts with individual air carriers to provide pre-departure screening at various airports within the State of Louisiana. As required by federal law, everyone entering the boarding area of an aircraft terminal is subject to screening which includes examination of purses, carry-on bags, and luggage, by hand or with x-ray machines, and walk-through metal detectors.

Under the Louisiana Private Security Regulatory and Licensing Law, La.R.S. 37:3270, et. seq., the Louisiana State Board of Private Security Examiners (Board) has the responsibility and authority to ensure compliance with the provisions of that statute, and to adopt rules and regulations for the private security industry in Louisiana.

On December 1, 1993, the Board determined that plaintiff was in violation of certain provisions of the state statute and several of the Board's rules pertaining to registering and training of private security officers. The employees in question were all performing pre-departure screening at the Baton Rouge and New Orleans airports. Plaintiff requested a rehearing and argued at the rehearing that the Airline Deregulation Act of 1978 (ADA), 49 U.S.C. § 1301, et. seq., prohibits the state from enforcing any state regulation against it with regard to the services it provides that are encompassed by the express preemption section of the ADA. The board

rejected this argument, and plaintiff sought judicial review of the decision in state court, which refused to enjoin enforcement of the administrative sanctions during those proceedings. The parties have agreed to stay the state court proceedings pending the outcome of these proceedings.

### Airline Deregulation

In 1978 the Congress passed the Airline Deregulation Act, amending the Federal Aviation Act of 1958 (FAA). The Congress determined that the best way to promote efficient, innovative, low cost, and quality interstate air transportation is by allowing market factors, rather than government regulation, to determine the routes, rates, and services of air carriers. *Hodges v. Delta Airlines, Inc.*, 4 F.3d 350 (5th Cir.1993), rev'd, 44 F.3d 334, 335 (5th Cir.1995) (en banc). To achieve this, the Congress dismantled federal economic regulation of the airline industry, and to prevent the states from frustrating the congressional goal of economic deregulation, promulgated the express preemption provision which is the focus of this dispute. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 377, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992).

The preemption section of the ADA, designated as 49 U.S.C. § 1305(a)(1), reads:

> [N]o state ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to the rates, routes or services of any air carrier having authority under Title IV of this Act to provide air transportation.

In 1994, the ADA was superseded by the Federal Aviation Administration Authorization Act of 1994 (FAAAA), which amended and redesignated the preemption statute as 49 U.S.C. § 41713(b)(1). It now provides:

> Except as provided in this subsection[1], a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.[2]

Although the Congress deregulated the economic aspects of the airline industry, federal law still regulates many activities of air carriers. For example, sections 1356(a) of the ADA, and 44901 of the FAAAA require the Administrator of the FAA to prescribe regulations requiring that all passengers and property that will be carried in the cabin of an aircraft in air transportation be screened. The screening must take place before boarding and must be carried out by a weapon-detecting facility or procedure used or operated by an employee or agent of the air carrier. Section 1357(c) of the ADA and Section 44935 of the FAAAA requires the Administrator of the Federal Aviation Administration to prescribe standards for the employment of and contracting for airport security personnel, which includes those performing the task of pre-departure screening. With regard to these standards, section 44935 of the FAAAA says:

> [t]he Administrator— ... shall prescribe uniform training standards and uniform minimum qualifications for individuals eligible for that training.

The specific standards for screening personnel set out by the Administrator are at 14 CFR § 108.31. These standards include minimum education levels and language skills, basic aptitude requirements, and appropriate training requirements.

### DISCUSSION

#### SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Neither party contends that material facts are in dispute.

---

**1.** Neither side contends that any other provision of this subsection applies here.

**2.** The Congress did not intend this revision to make a substantive change. *American Airlines, Inc. v. Wolens*, —— U.S. ——, —— n. 1, 115 S.Ct. 817, 821 n. 1, 130 L.Ed.2d 715 (1995).

## PREEMPTION

■ The Supremacy Clause, Article VI, Clause 2 of the Constitution, provides that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Federal preemption of state law may arise explicitly from a statute's language or implicitly from its structure and purpose. *Michael v. Shiley, Inc.,* 46 F.3d 1316, 1322 (3rd Cir.1995), citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992). That is to say, state law is preempted by federal law where the Congress has expressly preempted state law, where congressional intent to preempt may be inferred from the pervasiveness of the federal regulatory scheme, or where state law actually conflicts with federal law or interferes with the achievement of congressional objectives. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Preemption is a matter of congressional intent, and in determining whether federal law preempts a state cause of action, courts should primarily look to congressional intent. *California Federal Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). Intent to preempt does not have to be inferred from the substantive portions of a statute where the Congress has included an express preemption section providing a reliable indicium of congressional intent. Congressional enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992). Preemption is not to be presumed lightly. In fact, there is typically a presumption weighing against preemption to insure that neither the Congress nor the courts unintentionally or unnecessarily disturb the federal-state balance. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

### Express Preemption

■ In the recent Supreme Court case of *American Airlines, Inc. v. Wolens,* —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Court considered the meaning of the phrase "enact or enforce any law" in the context of the preemption section of the ADA, 49 U.S.C. § 1305(a)(1). The issue in that case was whether claims based on the Illinois Consumer Fraud and Deceptive Business Practices Act and state contract law had been preempted by the ADA. The Court held that the state Act was preempted because it was a law enacted or enforced by the state which regulated the rates, routes or services of air carriers. The Court also found that the claim based on state contract law was not preempted. The Court explained that the ADA's preemption bars state-imposed regulation of air carriers, but allows enforcement of contract terms set by the parties themselves. While there was some disagreement within the Court concerning the breach of contract claim, all of the participating members agreed that the Illinois Consumer Fraud Act was preempted because it presented an impermissible state-imposed regulation of the airline industry. *Wolens,* —— U.S. at ——, 115 S.Ct. at 823.

In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Court held that the preemption statute encompasses three types of state laws: (1) those specifically regulating to airlines; (2) those which indirectly regulate rates, routes, or services; and (3) those which have significant effect on rates, routes, or services, even though they are laws of general effect. *Morales,* 504 U.S. 374, 112 S.Ct. 2031. The court also held that the preemption provision in the ADA preempts all state laws within its sphere, including those which are consistent with the ADA's substantive requirements. *Morales,* 504 U.S. at 386, 112 S.Ct. at 2038. The issue before the Court was whether "Travel Industry Enforcement Guidelines" proposed by the National Association of Attorneys General (NAAG), which had been drafted to halt allegedly deceptive airline advertisements, were preempted by the federal statute. The Supreme Court held that the NAAG guidelines were preempted, but acknowledged that some state laws affect airline "services" in too tenuous or remote a manner to "relate to ... services" and thus would not be

preempted. *Morales,* 504 U.S. at 389, 112 S.Ct. at 2040. However, the Court did not define what type of effect would be "too remote" to be preempted.

While the Fifth Circuit has considered which "services" are preempted under the ADA on several occasions, all of the cases in which it has done so are distinguishable from the case before this court because they were claims by individual plaintiffs against air carriers based on state tort law. None of the cases in which the Fifth Circuit has considered the issue deal with the state itself, through one of its agencies, attempting to enforce its own specific statutory regulation of air carriers or their agents.

In *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350 (5th Cir.1993), rev'd, 44 F.3d 334, 335 (5th Cir.1995) (en banc), the Fifth Circuit held that a state law tort claim based on negligence, for allowing a case of rum to be stored in an overhead compartment, was not preempted because it was not a law of general effect which regulated air carrier "services". Citing *Wolens,* the court held that the intent of the Congress was not to preempt state law claims for personal injury.

In *Smith v. America West Airlines, Inc.,* 4 F.3d 356 (5th Cir.1993), rev'd, 44 F.3d 344 (5th Cir.1995) (en banc), the Fifth Circuit held that prohibiting a visibly deranged hijacker from boarding a plane was not a service which was "appurtenant to" and "necessarily included" with the contract of carriage between the passenger and the airline, and thus the plaintiff's suit based on negligence was not preempted.

*Morales,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), (deceptive airline advertising); and *Wolens,* ⸺ U.S. ⸺, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), (state consumer fraud act) both dealt with attempted state economic regulation by statutes of general application which the state sought to apply to airline services. The case before this court deals with attempted regulation of safety or security, not economic regulation. The plaintiff in this case is not asserting a personal claim against an airline based on either state tort or contract law.

*Smith v. America West Airlines, Inc.,* 4 F.3d 356 (5th Cir.1993), rev'd, 44 F.3d 344 (5th Cir. en banc, 1995) (visibly deranged hijacker boarding aircraft), which did relate to regulation of air carrier security and safety, and *Wolens* and *Hodges* are also distinguishable because they dealt with claims based on state tort and contract law. These cases are distinguishable because the policies and equities involved in cases based on state tort or contract law are obviously very different than those in which a state attempts to directly regulate an air carrier. The courts in those cases refused to find that the state laws had been preempted primarily because of these important equities and policies. We deal here, however, with a specific state regulatory measure and the equities and policies which are involved in claims based on state contract or tort law are not present.

The Louisiana Private Security Regulatory and Licensing Law is a specific law which affects the "services" of air carriers, and is within the reach of the preemptive provisions of the ADA and FAAAA. As noted previously, the federal scheme essentially creates uniform training standards and uniform minimum qualifications for employees or agents of airlines who perform pre-departure screening by requiring the Administrator of the FAA to create uniform regulations in these areas. To allow each state to prescribe the qualifications and training of employees of the airlines or of those with whom the airlines contract to perform such security screening would frustrate the uniformity of the training standards and employee qualifications, and thus conflict with the federal scheme. Additionally, the comprehensive nature of the federal legislation has not left any room for regulation by the individual states in the area of pre-departure screening. The Louisiana Private Security Regulatory and Licensing Law as applied by the Board, is a state law which affects a "service" of an air carrier ⸺ pre-departure screening. Louisiana cannot add to or subtract from the uniform training standards or minimum qualifications for individuals performing the task of pre-departure screening as set out by the Administrator of the FAA.

**Air Carrier**

 Although both the 1978 and the 1994 versions of the preemption statute apply on their face only to laws regulating air carriers, the courts have not strictly limited application of the act to air-carriers. In *Continental Airlines, Inc. v. American Airlines, Inc.*, 824 F.Supp. 689 (S.D.Tex.1993), the federal district court for the southern district of Texas applied the act to the parent corporation of an air-carrier, and in *Marlow v. AMR Services Corp.*, 870 F.Supp. 295 (D.Hawaii 1994), a court found that the act applied to preempt the state "whistleblower" statute in a suit against AMR, who was not an air carrier.

Although the plaintiff here is not an "air-carrier", it is certainly an agent of an air-carrier and state regulation of its air terminal services would frustrate the intent of the Congress to provide uniform federal standards for those such as plaintiff, who contract with air-carriers to perform their statutorily mandated duties. As the court noted in *Marlow,* supra:

> ... it is preposterous to assume that Congress intended to block the prosecution against air carriers of certain suits but allow those same suits to proceed against all others.... The defendant need not be an air carrier so long as the state laws which prohibit defendant's alleged wrong-doing "relate to" airline routes, rates, or services. 870 F.Supp. at 298.

Plaintiff, as the agent of the air carriers with whom it has contracted to perform pre-departure screening, is within the reach of the preemptive statute.

### CONCLUSION

Regulation of pre-departure screening as performed by plaintiff's employees is an activity which has been expressly preempted by federal law. Plaintiff's motion for summary judgment is hereby GRANTED, and this court will enter judgment declaring that the provisions of the Louisiana Private Security Regulatory and Licensing Law, La.R.S. 37:3270–3298, as applied to plaintiff's employees performing pre-departure screening at airports, are preempted by federal law, and that plaintiff is not obligated to adhere to the requirements of state law or the November 9, 1994 sanctions imposed by the Louisiana State Board of Private Security Examiners against them, as they apply to plaintiff's employees who perform pre-departure screening at air terminals in Louisiana. The judgment shall also enjoin the Louisiana State Board of Private Security Examiners (Board), its agents, and servants, from enforcing either the Louisiana Private Security Regulatory and Licensing Law, or the Board's sanctions against the plaintiff with regard to plaintiff's employees performing pre-departure screening at airports. The motion for summary judgment on behalf of defendant is hereby DENIED.