Mark ABDU–BRISSON, et al., Plaintiffs,

v.

DELTA AIR LINES, INC., and the Air Line Pilots Association, International (joined pursuant to Fed.R.Civ.P. 19), Defendants.

No. 94 Civ. 8494 (HB).

United States District Court, S.D. New York.

May 16, 1996.

Edward J.M. Little, M. Lawrence Noyer, Jr., Jody Kasten, William Fleming, Zuckerman, Spader, Goldstein, Taylor & Kolker, New York City, for plaintiffs.

Stuart H. Bompey, Ira G. Rosenstein, Orrick, Herrington & Sutcliffe, New York City, William H. Boice, Stephen E. Hudson, Walter E. Johnson, Kilpatrick & Cody, Atlanta, GA, for defendant Delta Air Lines, Inc.

### OPINION AND ORDER

BAER, District Judge:

Currently before the Court are defendant Delta Air Lines, Inc.'s motions to dismiss the complaint and for summary judgment. For the reasons that follow, the motion to dismiss is granted. Accordingly, it is unnecessary to reach the motion for summary judgment.

## I. Background

Plaintiffs are 488 of the approximately 774 former pilots for Pan Am World Airways, Inc. who were hired by Delta in the fall of 1991 in connection with Delta's purchase of certain Pan Am assets. Plaintiffs allege that Delta discriminated against them in the terms and conditions of their employment based on their age in violation of the New York State Human Rights Law (State HRL), N.Y.Exec.Law § 296 and the New York City Human Rights Law (City HRL), N.Y.City Admin.Code §§ 8–107(1)(a) and (c), 8–107(17). Specifically, plaintiffs challenge the manner in which they were integrated into the Delta pilots' seniority list, Delta's requirement that they serve for ten years before they become eligible for full post-retirement medical benefits, and the manner in which their pay is increased over a three-year period to reach parity with existing Delta pilots.

## II. Discussion

This action was filed in New York Supreme Court. Delta removed the case to this Court on the ground that plaintiff's complaint "arises under" the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 101 et seq. because it seeks to modify the Delta Medical Benefits Plan. This Court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367. Delta's motion to dismiss challenges this Court's jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

In adjudicating pendent state law claims, "a federal court acts essentially as a state court." *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996). Therefore, if a state court lacks jurisdiction over a cause of action, the federal court is also deprived of jurisdiction. *See id.* (" 'If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow a state's jurisdictional determination and not allow that claim to be

appended to a federal law claim in federal court.'" (*quoting Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992))).

■ Delta argues that this Court has no jurisdiction on several grounds. Most importantly, Delta contends that plaintiffs' complaint is preempted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1). The ADA provides that:

[A] State [or a] political subdivision of a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier....

49 U.S.C. § 41713(b)(1).[1] I agree that this federal law preempts plaintiffs' age discrimination claims and dismiss the complaint on this ground only.

The Supreme Court considered the predecessor to § 41713(b)(1) in two recent opinions. In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Court interpreted the term "relating to" as used in the ADA. The Court adopted the interpretation it had applied to the "relates to" language used in ERISA and held that a state law is related to rates, routes or services if it has "a connection with or reference to" them. *Id.* at 384, 112 S.Ct. at 2037. The Court followed its ERISA jurisprudence and noted the expansive reach of the ERISA preemption. *Id.* (citing cases). Preemption does have its limits, however, where the effects of the state law are "'too tenuous, remote, or peripheral.'" *Id.* at 390, 112 S.Ct. at 2040 (*quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490 (1983)).

The Court next addressed ADA preemption in *American Airlines, Inc. v. Wolens*, — U.S. —, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), where it considered the words "enact or enforce any law." Wolens sued American for violation of the Illinois Consumer Fraud Act and breach of contract after the airline retroactively amended its frequent flyer program. The Supreme Court held that the ADA preempted the Consumer Fraud Act claim, but not the breach of contract claim. In making this distinction, the Court found that the Illinois statute was a prescriptive rule of state public policy and thus an action based on it involved the enforcement of state law. *Id.*, at — — —, 115 S.Ct. at 823–24. In contrast, state court adjudication of an action based on a private contract did not involve a sufficient imposition of state policy on air carrier operations to warrant preemption. *Id.*, at —, 115 S.Ct. at 824.

■ Read together, *Morales* and *Wolens* create a two-part test for ADA preemption of state law claims. First, the state law claim must involve the enforcement of a state law. Second, the state law must have a connection with or relation to airline prices, routes, or services. *See Travel All Over The World v. Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996); *Continental Airlines v. Kiefer*, 920 S.W.2d 274, 281 (Tex.1996).

Plaintiffs do not dispute that this action seeks to enforce a prescriptive state statute that, like the Illinois Consumer Fraud Act, "controls the primary conduct of those falling within its governance." *Wolens*, — U.S. at —, 115 S.Ct. at 823. Therefore, the first prong is satisfied.

The focus of this dispute is on whether the State HRL and the City HRL relate to prices or services. Delta argues that any change to the ten-year service requirement for full post-retirement medical benefits and the plaintiffs' pay scale would have a direct economic impact on the price it charges consumers. Plaintiffs essentially concede the logic of this argument, but respond that any effect on price would be too insignificant because there are only a limited number of plaintiffs and Delta could easily absorb the added costs rather than pass them along to the public. The issue, however, is not whether enforcement of the state law in this case

---

1. Prior to 1994, when Congress reenacted Title 49, the ADA preemption provision applied to state laws "relating to rates, routes, or services of any air carrier." 49 U.S.C.App. § 1305(a)(1). Congress did not intend to make any substantive changes in the revision. *American Airlines, Inc. v. Wolens*, — U.S. —, — n. 1, 115 S.Ct. 817, 821 n. 1, 130 L.Ed.2d 715 (1995) (*citing* Pub.L. No. 103–272, § 1(a), 108 Stat. 745).

would have a definite and significant effect on price, but rather whether enforcement of the law would interfere with the congressional scheme of deregulation. *See Morales,* 504 U.S. at 378, 112 S.Ct. at 2034 (finding that Congress included the preemption provision "[t]o ensure that the States would not undo federal deregulation with regulation of their own"). Thus it is the potential impact that must be considered. Any examination of the particular liability exposure in this case would be an evaluation of the merits which is inappropriate on a challenge to the Court's jurisdiction. I agree with Delta that the claims based on the medical benefits and pay scale provisions of plaintiffs' employment contracts are sufficiently related to price and therefore preempted. *Cf. Kiefer,* 920 S.W.2d at 281 (holding that common law tort liability is "clearly" related to price under *Morales* because such liability "cannot but have, in *Morales'* words, 'a significant impact upon the fares [airlines] charge'" (*quoting Morales,* 504 U.S. at 390, 112 S.Ct. at 2040)).

Delta argues that the challenge to the seniority integration plan relates to the services of air transportation because alteration of the seniority list would impact pilot staffing.[2] Major changes in staffing would in turn "cause tremendous turmoil among Delta's pilots," Def.Mem. at 12, and disrupt the "harmonious relationship[s]" in the cockpit that are necessary to the provision of quality air transportation services. Def.Reply Mem. at 6. Plaintiff disputes this factual assertion and claims that once certified, all pilots are "[i]n every important respect ... fungible." Pl.Mem. at 9. Although I find it inappropriate to consider the exact effect personnel changes may have on services, I must analyze whether pilot staffing is "related to" Delta's services.

The term "services" has generally been interpreted with reference to the contractual exchange between the air carrier and the consumer. As the Fifth Circuit held, "[e]lements of the air carrier service bargain include items such as ticketing, boarding pro-

cedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995) (*en banc*); *see also Travel All Over,* 73 F.3d at 1433. I conclude that the order of a pilot seniority list has a connection with and therefore is "related to" the provision of air carrier services within the meaning of *Morales.* Indeed, pilot staffing is an integral element of "the transportation itself."

Several other courts have found state employment laws are preempted by the ADA. In *Marlow v. AMR Services Corp.,* 870 F.Supp. 295 (D.Hawaii 1994), the plaintiff had been employed by a jetbridge maintenance company as a supervisor. The court held that Marlow's wrongful termination claims based on alleged violations of the Hawaii Whistleblowers' Protection Act and public policy as stated by the Hawaii Supreme Court were preempted by the ADA. Applying the Fifth Circuit's definition, the court found that jetbridge maintenance was a service under the ADA. *Id.* at 299.

Similarly, in *Belgard v. United Airlines,* 857 P.2d 467 (Colo.Ct.App.1992), *cert. denied,* 510 U.S. 1117, 114 S.Ct. 1066, 127 L.Ed.2d 386 (1993), the plaintiffs sued after they had been denied employment as pilots because they had undergone eye surgery to reduce the effects of myopia. The court held that the claims based on the Colorado handicap discrimination statute and related regulations were preempted by the ADA. The court concluded that:

> any law or regulation that restricts an airlines' selection of employees, based on their physical characteristics, must necessarily have a connection with and reference to, and therefore must be one "relating to," the services to be rendered by that airline.

*Id.* at 471. *See also Lewonchuk v. Business Express, Inc.,* No. CV 940315626S, 1995 WL 781431, at *3 (Conn.Super.Ct. Dec. 15, 1995) (dismissing claim by a pilot "because the ADA preempts a wrongful termination action

---

**2.** Defendant does not claim that changes to the seniority list would affect price because such changes would have a neutral effect on Delta's labor costs. Any increase in pay granted to a

plaintiff who was advanced on the list would be offset by the decrease in pay sustained by the Delta pilot who was moved down on the seniority list.

in which the underlying public policy is a state law").

### III. Conclusion

For the reasons discussed above, the motion to dismiss is granted.

SO ORDERED.