STEARNS AIRPORT EQUIPMENT CO., INC., Plaintiff,

v.

FMC CORPORATION, Defendant.

No. 4:95–CV–880–A.

United States District Court, N.D. Texas, Fort Worth Division.

May 31, 1996.

---

**10.** See footnote 6, *supra.*

senger boarding bridges and walkways for airports and that they are, for all practical purposes, the only competitors in the market for these products in the United States. Plaintiff alleges that defendant, which commands an eighty percent share of the market, has engaged in conduct designed to drive plaintiff from the market.

Eric Nevins Whitney, Lynn Stodghill Melsheimer & Tillotson, Dallas, TX, Robert William Kantner, Cynthia Lee Dow, Baker & Botts, Dallas, TX, for Stearns Airport Equipment Co., Inc.

Walter Andrew Herring, Fulbright & Jaworski, Dallas, TX, Layne E. Kruse, Frank Griffith Jones, Fulbright & Jaworski, Houston, TX, Hugh Gottschalk, Terence M. Ridley, Otten Johnson, Robinson Neff & Ragonetti, Denver, CO, for FMC Corp.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on for consideration the motion of defendant, FMC Corporation, for partial summary judgment. The court, having considered the motion, the response of plaintiff, Stearns Airport Equipment Co., Inc., the record, the summary judgment evidence, and applicable authorities, finds that the motion should be granted in part.

### I.

#### *Plaintiff's Claims*

On December 4, 1995, plaintiff filed its original complaint in this action. On April 30, 1996, having first obtained leave of court, plaintiff filed its first amended complaint. In it, plaintiff asserts five causes of action, to wit: violations of § 2 of the Sherman Act (count one), price discrimination in violation of § 2(a) of the Robinson–Patman Act (count two), violations of § 1 of the Sherman Act (count three), unfair competition (count four), and tortious interference (count five). Plaintiff alleges that it and defendant are competitors in the business of manufacturing pas-

### II.

#### *Defendant's Motion for Partial Summary Judgment*

Defendant seeks judgment as a matter of law that plaintiff take nothing on its claims set forth in counts two, three, four, and five. Defendant maintains that summary judgment is appropriate for the following reasons: As to count two, the Robinson–Patman Act does not apply to sales to governmental entities and can only apply to sales of "commodities of like grade and quality." As to count three, there is no conspiracy when a buyer decides to award a contract to a seller and, even if a conspiracy could be shown in this case, application of such theory is barred by the Noerr–Pennington Doctrine. As to counts four and five, the claims of unfair competition and tortious interference are preempted by the Airline Deregulation Act of 1978. And, finally, defendant urges that it cannot be held liable for any conduct prior to May 27, 1994, the date it first entered the business of manufacturing and selling passenger boarding bridges.

### III.

#### *Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The movant may discharge this burden by pointing out the absence of evidence to support one or more

essential elements the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. at 2510, 2514. To meet this burden, the non-movant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s][its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552–53. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. at 1361–62.

■ Summary judgment is less common in antitrust cases, which typically are more complicated and more difficult to resolve on the basis of a written record alone. *Consolidated Metal Prods., Inc. v. American Petroleum Inst.,* 846 F.2d 284, 288 (5th Cir.1988). Although sparingly used, however, summary judgment may be appropriate in such cases. *Munitrad Systems, Inc. v. Standard & Poor's Corp.,* 672 F.2d 436, 440 (5th Cir. 1982).

## IV.

### Count Two

In count two, plaintiff alleges that defendant has engaged in price discrimination in violation of § 2(a) of the Robinson–Patman Act, 15 U.S.C. § 13(a). Plaintiff alleges that defendant has discriminated in the prices it has charged in contemporaneous sales to different purchasers of commodities of like grade and quality depending on whether it was able to persuade the purchaser not to request bids. When plaintiff bid against defendant, defendant priced its passenger boarding bridges and walkways at predatory levels.

■ Defendant first argues that plaintiff cannot prevail on this ground because sales of goods to governmental entities are exempt from the Robinson–Patman Act. *See Jefferson County Pharmaceutical Ass'n v. Abbott Labs.,* 460 U.S. 150, 171, 103 S.Ct. 1011, 1024, 74 L.Ed.2d 882 (1983) (Stevens, J., dissenting); *Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co.,* 632 F.2d 680, 688 (7th Cir.1980) (both noting that federal government purchases are not covered by the Act). Plaintiff argues that there is an exception to the "state action" doctrine under *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). That exception applies to claims under the Sherman Act, however, and the court is not aware of any authority that would support its application to the Robinson–Patman Act. Plaintiff further argues that an exception arises out of *Jefferson County* because, by buying passenger boarding bridges and leasing them to airlines, airport authorities are in competition with plaintiff and defendant. The court does not accept the argument that purchasers who are not in the resale business are in competition with the parties to this action. Clearly, the Robinson–Patman Act does not apply to leases. *Export Liquor Sales, Inc. v. Ammex Warehouse Co.,* 426 F.2d 251, 252 (6th Cir. 1970), *cert. denied,* 400 U.S. 1000, 91 S.Ct. 460, 27 L.Ed.2d 451 (1971).

The court does note that plaintiff's complaint is not limited to sales to governmental entities by defendant. To the extent that plaintiff asserts claims based on contracts,

combinations, or conspiracies with consultants, general contractors, and/or airlines, these claims are not addressed by the summary judgment motion. *See* First amended complaint at ¶ 46.

■ As an alternative, defendant argues that the passenger boarding bridges are not commodities of like grade and quality so as to fall within the Robinson–Patman Act. 15 U.S.C. § 13(a). Defendant argues that its sales of passenger boarding bridges are more in the nature of construction contracts to which the act does not apply. *See Ideal Plumbing Co. v. Benco, Inc.,* 382 F.Supp. 1161, 1165–67 (W.D.Ark.1974), *aff'd,* 529 F.2d 972 (8th Cir.1976). Although defendant makes a strong argument, plaintiff has come forward with summary judgment evidence to raise a fact issue as to whether the bridges should be considered commodities. *See* supplement to plaintiff's response to defendant's motion for partial summary judgment, Exhibit A, excerpts from the deposition of Kenneth Wiseman. Thus, even if the motion addressed the alleged contracts, combinations or conspiracies with persons other than airport authorities, there would be a fact issue on this ground.

## V.

### *Count Three*

In count three, plaintiff alleges that defendant violated § 1 of the Sherman Act by entering into contracts, combinations, and/or conspiracies to exclude plaintiff from bidding on projects and thereby unreasonably restrain trade and affect interstate commerce. 15 U.S.C. § 1.

■ Defendant first alleges that plaintiff cannot prove any unlawful contract, combination, or conspiracy that restrained trade. In response, plaintiff argues that defendant has misconstrued its complaint. Nevertheless, plaintiff has not raised any genuine fact issue with regard to the existence of a conspiracy. Plaintiff's only "evidence" pertinent to this issue is contained in the affidavit of Richard Pell attached to its summary judgment response. In it, Pell merely states his belief that defendant conspired with purchasers.

No probative summary judgment evidence is proffered on this ground.

■ Defendant also argues that this claim is barred by the Noerr–Pennington Doctrine. The doctrine is based on *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The doctrine recognizes the right of any person under the First Amendment to petition the government on any issue, even though the outcome may be anticompetitive. The doctrine provides an exception to antitrust liability enabling citizens or business entities to influence or petition public officials to take official action that will harm or eliminate competition. *Independent Taxicab Drivers' Employees v. Greater Houston Transp. Co.,* 760 F.2d 607, 612 (5th Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985).

The court is persuaded that the Noerr–Pennington Doctrine would not bar this claim. The action about which plaintiff complains is clearly not in the political arena. *See City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991). Here, the governmental authorities to which reference is made are ordinary purchasers and not regulators of the market for passenger boarding bridges. *See United States v. North Dakota Hosp. Ass'n,* 640 F.Supp. 1028, 1041 (D.N.D.1986); *Compact v. Metropolitan Gov't,* 594 F.Supp. 1567, 1573 (M.D.Tenn.1984) (noting that Noerr–Pennington protects political activity by citizens when addressing government in its legislative capacity, and not commercial activity by businessmen dealing with government in its proprietary capacity.) Moreover, the situation described by plaintiff falls within the "sham" transaction exception to Noerr–Pennington immunity in that defendant is alleged to have effectively deprived plaintiff meaningful access to government contracts. *Affiliated Capital Corp. v. City of Houston,* 735 F.2d 1555, 1567 (5th Cir.1984), *cert. denied,* 474 U.S. 1053, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986).

## VI.

### Counts Four and Five

■ Defendant next argues that plaintiff's state law claims for unfair competition (count four) and tortious interference (count five) are preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 1305(a), since they necessarily relate to rates and services in the airline industry.[1] The statute governing preemption provides in pertinent part:

[A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier....

49 U.S.C. § 41713(b)(1). Actions that affect rates, routes, or services in too tenuous, remote, or peripheral a manner are not preempted. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 390, 112 S.Ct. 2031, 2040, 119 L.Ed.2d 157 (1992).

■ Defendant argues that *Marlow v. AMR Servs. Corp.,* 870 F.Supp. 295 (D.Haw. 1994), is directly on point and requires that plaintiff's fourth and fifth counts be dismissed. In *Marlow,* the plaintiff was employed to supervise defendant's servicing and maintenance of jet bridges at a Hawaii airport. The plaintiff maintained that when he complained about health and safety violations, he was fired. He sued the defendant for violation of the Hawaii Whistleblowers' Protection Act and for wrongful termination. The district court determined that his claims were preempted. The court reasoned:

Jetbridges are also an integral part of air carrier services, no matter who maintains them. Keeping the bridges in working order is critical to today's passenger air travel. Therefore, the Court finds that Jetbridge maintenance and service is included within the meaning of carrier "services," as that term is used in section

1305(a). 870 F.Supp. at 299. The court stated that plaintiff's claims were distinguishable from those brought by airline passengers and found not to be preempted. *See, e.g. Hodges v. Delta Airlines,* 4 F.3d 350 (5th Cir.1993); *Bayne v. Adventure Tours U.S.A., Inc.,* 841 F.Supp. 206 (N.D.Tex.1994); *Chouest v. American Airlines, Inc.,* 839 F.Supp. 412 (E.D.La.1993).

The court is not persuaded that *Marlow* should be controlling here. Like the airline passenger cases, the case at hand involves claims that are too remote to be preempted. At issue here is not maintenance and servicing, but sales of the passenger boarding bridges themselves. Under defendant's theory, any cost associated with building an airport would necessarily relate to the rates or services of an airline.

Defendant also relies on *Continental Airlines, Inc. v. American Airlines, Inc.,* 824 F.Supp. 689 (S.D.Tex.1993), and *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423 (7th Cir.1996). These cases are likewise distinguishable. *Continental* concerned a dispute between airlines over airfares. In *Travel All,* the court determined that a tortious interference claim was preempted because it expressly referred to airline services, but that claims for slander and defamation were not preempted.[2]

## VII.

### Liability for Conduct Prior to May 27, 1994

■ Defendant maintains that, in any event, it may not be held liable for any conduct occurring prior to May 27, 1994, when it acquired certain assets—in essence the passenger boarding bridge division—of Pneumo Abex Corporation ("PAC"). It relies on the general rule of successor liability that when a corporation purchases some or all of the assets of another corporation, the

---

1. The court notes that 49 U.S.C. § 1305 was repealed in 1994. Preemption is now covered by 49 U.S.C. § 41713(b)(1). Congress intended the amendment to make no substantive change in prior law. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1430, n. 7 (7th Cir.1996).

2. Under defendant's theory, the slander and defamation claims would have been preempted because a large judgment might cause the airline to raise its prices.

purchaser does not assume the debts and liabilities of the seller. *Raytech Corp. v. White,* 54 F.3d 187, 192 n. 6 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995). Defendant also relies on the terms of the purchase agreement between it and PAC that the contract is not intended to benefit third parties. And, defendant maintains that the "mere continuation" theory does not apply.

■ There are four exceptions to the general rule regarding successor liability. *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 174 (5th Cir.1985). A successor may be held liable (1) where the successor expressly or impliedly agrees to assume the liability of the predecessor, (2) when the transaction may be considered a *de facto* merger, (3) when the successor is a mere continuation of the predecessor, and (4) when the transaction is fraudulent. *Id.; Kern v. Frye Copysystems. Inc.,* 878 F.Supp. 660, 664 (S.D.N.Y.1995). Plaintiff relies on the first and third exceptions.

■ The parties agree that the purchase agreement between defendant and PAC provides that defendant assumed certain liabilities of PAC arising out of conduct prior to the purchase date and expressly did not assume other liabilities. Although plaintiff argues that the excluded liabilities do not encompass the claims asserted in this action, it does not adequately address the provision of the purchase agreement that negates any intent to benefit third parties. This is an issue that will require further briefing. None of the cases cited discuss a situation analogous to the one at hand.

■ Plaintiff alternatively argues that defendant is liable for conduct of its predecessor pursuant to the "mere continuation" theory. Typically a court considers the following factors in determining whether one business is a mere continuation of another: (1) retention of the same employees, (2) retention of the same supervisory personnel, (3) retention of the same production facility in the same physical location, (4) production of the same product, (5) retention of the same name, (6) continuity of assets, (7) continuity of general business oper-

ations, and (8) whether the successor holds itself out as the continuation of the previous enterprise. *Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169, 1176, n. 2 (5th Cir.1992); *Mozingo,* 752 F.2d at 174–75. Defendant argues that it is not a mere continuation of its predecessor because PAC continued in business after the transfer. The summary judgment evidence reflects, however, that defendant purchased a business unit of PAC, including the stock of certain affiliated companies. There is summary judgment evidence that defendant is a mere continuation of the predecessor business.

### VIII.

#### *ORDER*

For the reasons discussed herein,

The court ORDERS that defendant's motion for partial summary judgment be, and is hereby, granted in part; that plaintiff take nothing on its claims (1) under count two as they relate to defendant's sales to governmental entities, and (2) under count three; and that such claims be, and are hereby, dismissed with prejudice. The court further ORDERS that defendant's motion be, and is hereby, otherwise denied.